Judge Owsley
delivered the opinion of the Court.
The present defendants in error, as part of the heirs of James Hickman, Sen. deceased, brought their bill in equity against the present plaintiffs in error, who are also part of the heirs, for the purpose of having partition of the deceased, James Hickman’s'estate, according to the statute providing for the descent and distribution of estates of persons dying intestate.
The plaintiffs in error answered the-bill and also filed a cross bill against the defendants in error, in each of which they deny-that the deceased, James, died intestate, and exhibited a will and several codicils thereto annexed, which they allege to be the last will and testament of the said James, and which they pray may be established as such, and that partition of the estate be decreed conformable to the provisions of that will and the codicils.
The cross bill was heard and a decree made establishing the will, and giving to the complainants therein costs. Commissioners were also appointed, with directions to survey and report to the court, a plat of the land owned by the testator and disposed of by him in his will, representing therein the figure and boundary of the land devised to each child, as described in the will and codicils. A survey was executed in conformity to the directions of the court, and- report thereof made by the commissioners, and a final decree of partition thereupon pronounced by the court. To reverse that decree, this writ of error is prosecuted by James, Joel and Richard Hickman, three of the devisees named in the will.
The validity of the will and codicils thereto attached, is not involved in the present contest. The parties have acquiesced in the decree establishing the will, until by lapse of time, their right to draw in question the correctness of that decree in this *583 court, is foreclosed, and of course in reviewing the correctness of the final decree of partition, we must assume the will to have been correctly established and have nothing more to do than enquire whe ther or not the provisions of the will or codicils have been violated by the decree to which the present writ of error is prosecuted.
Devisos Of the land.
Devise of the surplus land.
Codicils to tho will.
At the date of the will the testator was the owner of two adjoining surveys of land, each calling for two thousand acres. By the original will, which was made in 1785, the testator, without description of boundary, devised to his children different quantities of land, to be taken out of those surveys, viz:
To David Hickman, 400 acres.
Henry, 400 acres.
Richard, (566 1-2 acres.
James, 666 1 -2 acres.
Joel, 666 1-2 acres,
Ann, 333 acres.
Eleanor, 333 acres.
Hannah, 333 acres.
Susannah, 200 acres.
The quantity so devised amounts in the whole, to three thousand nine hundred and ninety-eight and one half acres, falling short of the quantity called for in the two surveys, only one and one half acres. After these devises there follows in the will this provision :
“Item. I also give and bequeath unto my sons Richard Hickman, James Hickman and Joel Hickman, all the surplus land in my two tracts of land lying in Fayette county, (meaning the two tracts of Uvo thousand acres each, above mentioned,) and also all lands that I may obtain, to be equally divided amongst all my children.”
The codicils are three in number, the first of Which is dated in 1801, the second in 1806, and tire third in 1812. One of the principal objects with the testator, in each codicil, seems to have been to locate by meets and bounds, the respective quantities named and specifically devised in the original will. After referring to tire original will, and making the codicil of 1801 part thereof, the testator *584 proceds to direct the' boundary of the land devisee! to each of his children in the original will, by the use of expressions like Ihe following: “My son Richard Hickman’s land is to be laid off,” &c. “My son James fíickman’s land is to be laid off,” &c. and so on with respect to each devisee to whom a named quantity of acres is devised in the original will in each case, directing the particular manner the land of each should be laid off.' And after having directed how the land of each should be bounded, the testator in the codicil of 1801, makes the following provision: “the lands that has been sold for my usé is to be equally taken out of each legatee’s part.”
Construction contended for by the plaintiff in error.
*584 In each of the other codicils, the testator adopts the same language with respect to the land of his> children, but in some respects varying as to the description of boundary. There is also in each of the codicils, a provision such as that contained in the codicil of 180!, directing that the lands which had been sold for the use of the testator, should be equally taken out of each legatee’s part. And after having gone through Ins description of boundary, the testator adds, in the codicil of 1806 — “my lands in Fayette and Clarke, (the two above mentioned surveys) to be divided in the manner and form above mentioned, and all other lands and estate that is not particularly pointed out, to he equally divided a-, mong the said legatees.” And in the codicil of 1812, he provides that “all other lands and estate that is not particularly pointed out, is to be equally divided amongst my children legatees, and to pass in the same manner and way as above specified, to eacli of said legatees.
Two hundred and fifty-two acres of the land contained in the two surveys, was sold in the lifetime of the testator, for his use, and those surveys are found to contain, by actual admeasurement, six hundred and fifty-six acres more than the nominal quantity of four thousand acres.
The surplus which is thus contained in the survey above t,he aggregate number of acres specifically devised by description of quantity in the original *585 will, is claimed by the plaintiffs in error under the devise to them of the surplus, and they contend that the specific quantity devised to each devisee should be reduced so as to make the devise to each abate equal portions in quantity of the two hundred land fifty-two acres, sold for the use of the testator.
Decree of the circuit court.
Held the surplus land was devised to the plaintiffs in error.
The court was of opinion that the plaintiffs in error were entitled to the surplus land after deduct? ing therefrom the quantity of acres sold for the use of the testator; but was not of opinion that there pught to be any abatement of the specific quantities devised; and decreed to each of the devisees the quantify of acres respectively devised to them, giving, in the partition to the lands of each, such a location as was thought by the court to conform, as npar as practicable, to the directions of the testator, iii the codicils attached to his will. To reverse that decree the plaintiffs have prosecuted their writ of erfor, and by agreement of the parties, the defendants have been permitted to assign errors as though a writ of error had been also sued out by them.
The question of most importance to the parties, and that to which the attention of the court will first be directed, relates to the extent of interest to which they are respectively entitled in the two surveys, under the devises contained in the will of the testator, and the codicils thereto annexed. Whilst the plaintiffs complain of their not having obtained as much land by the decree, as they are entitled to under the will, it is insisted by the defendants that they have obtained íqo mucli. On the part of the defendants it is denied that by the original will the testator has done more in relation to the surplus Jand contained in the two surveys, than to devise it to the plaintiffs in error “to be equally divided” amongst his children; but jf in that they should be mistaken, and the original will is construed to have •devised the surplus to the plaintiffs, the defendants contend that the devise has since been'revoked, and that by the codicils of 1808 and 1812, the surplus is directed to be divided equally among all the de» visees.
Surplus land orirTna/'wil? under that ’ held not to’ be included m the ex-other lands and estate not particu-0au^pe“ ployed in the codioil.
We have no hesitation in rejecting the construe* tion which the defendants contend should be given -to the deviseas to the surplus contained in the original will. By adverting to the language used by the testator in that part of the will which speaks of the surplus, it will be discovered that he had in view not only the disposal of the surplus which might be contained in the two surveys, but also the disposal of other lands which might be obtained by him; •and it is by attempting to make the expressions applicable to the latter object only, influence the import of those used by the testator, with reference to the former object, that the construction contended for by the defendants is endeavored to be maintained. But when the language of the testator is attended to, and the difference of expression used in relation-to the two objects is observed, we can have no hesitation in rejecting any other construction of the devise of surplus, than that which vests the whole surplus in the plaintiffs in error.
But admitting that by the original will, the surplus is devised to the plaintiffs in error, is there any hhing contained in either codicil, by which that devise is either revoked in whole or in part.
It is not pretended that either codicil contains any revoking clause, so that if the devise of the surplus be revoked at all, it must be owing to some incompatible or repugnant provision contained m some one or more of the codicils. Does either of the codicils then, contain any such provision? On the- part of the defendants the affirmative of this question is assumed, and-in support -of their assumption we are referred to the codicils of 1806 and 1812. The provisions contained in those codicils and upon which reliance is placed by the defendants, 'have already been referred to, and need not again be repeated. It may not, however, be improper to remark, that the only expressions, which are tobe found in either codicil, having even the semblance of repugnance to the devise of surplus in the original will are those used in the codicil of 1808, as well as that of 1812, by which the testator directs, ^‘all other lands and estates that is not particularly *587 pointed out to be equally divided among his legatees.” .But this seeming repugnance, if any such there be, vanishes when we ask ourselves what is to be understood by the expressions, lands and estates not particularly pointed out? Those expressions surely cannot have been understood by the testator to allude to the lands and estates referred to by him in the codicils, and to no other, or why in each codicil was he so particular as to refer to the original will, and expressly adopt the codicil as a part thereof? Each codicil was intended by the testator to be an addition to, and form a part of his original will, thereby making the original and codicils compose one whole and perfect will. The testator must, therefore, when employed in making the codicils, he understood to have had in view the contents of his original will, and knowing as he must be presumed to have known, that he had therein devised the surplus of the surveys specifically to the plaintiffs, he cannot, with any propriety, be presumed to have used the expressions, “other lands and estates not particularly pointed out,” wdth the intention to revoke or change the devise of surplus. The surplus is particularly pointed out by the devise to the plaintiffs and it is not the lands or estates pointed out, but all other lands and estate not particularly pointed out, that is directed by the expressions used in the codicils, to be equally divided •among the testator’s devisees. There is, therefore, nothing in either codicil which can, according to any reasonable interpretation, be construed to defeat the plaintiff’s right under the original will, to all the lands contained in the surveys, after subtracting therefrom the quantity of acres mentioned in the several specific devises of quantity.
Devises of the certain tracts and of the surplus lands, shall all suffer the same diminution because of sales' afterwants made ana directed by á subsequent codicil to be taken equally oft' each devisees part-
*587 But here an objection arises growing out of the fact that part of the hand was sold in the lifetime of the testator, for his usé and benefit. It is contended by the defendants; and the decree of the court below seems to have been predicated upon the same notion, that if the plaintiffs are entitled to any of the surplus, it is only for the residue after deducting that which was sold for the use of the testator and that on account of the land so sold, there should be *588 no abatement in the quantity of acres specifically devised to the respective devisees. The will, how-fever, furnishes the best and most conclusive answer to this argument. It declares that the land sold for the use of the testator, tshall be equally taken out of each devisee’s part. Now if the directions of the testator are to be regarded, and we disclaim the powfer to disregard them, it is obvious that the land Sold for the testator’s use, must, in equal parts, be taken from the quantity of acres mentioned in the devises to the respective devisees, thereby diminishing the number of acres devised to each, twenty-eight acres. Instead, therefore, of decreeing to each the nominal quantity of acres devised, the court should have deducted from the devise to each, twenty-eight acres, arid decreed the residue to them respectively.
Decree and mandate.
Petition for a re-hearing.
Messrs. Bledsoe and Crittenden, for Defendants in error, moved a rehearing.
The decree must be reversed with cost, the cause remanded to the court below, and such orders and decrees thefe made as may not be inconsistent with the principles of this opinion, but which may be necessary and proper to effect a partition and devision of the land. between the respective de^sees, according to the interest each is herein adjudged to be entitled to, regarding, as near as may be, the directions of the testator in the codicils, in locating and bounding the land of each devisee.
The defendants in error, by their counsel, respectfully petition the court for a rehearing -in this case, on the following grounds:
1st. It is conceived, that however true it may be; that the testator by his will devised the surplus land in the two surveys, of 2G()C¡ acres each, according to the nominal quantity, to the plaintiffs in error, and that said devise was unrevoked by either of the codicils, yet it seems to the defendant’s counsel, that taking the will and all the codicils together, seeing that testator has described the particular location and boundary of eách legatee’s part, the surplus intended, was what should be contained ii> *589 said two surveys, after filling up the specific compliment and boundary of each legatee. Thai this was testator’s primany intention, by the will, itself, seems to admit of but little doubt. The only doubt rests upon that clause in the codicils of 1801, 1806 and 1812, which locate and describe the bounds of the several parcels of lands devised by the will, which had not been precisely done therein, and which purporting to be annexed to the will, says “the lands that has been sold for my own use, is to be equally taken out of each legatee’s part;” and ho goes on further to say, in the succeeding clause, to that above quoted, “and if it should so happen, that there should be a law suit or suits, now commenced, or ever shall be commenced hereafter, for the title of said lands or any part thereof, that all the expenses arising therefrom* shall be equally divided amongst the legatees in this will, and if it should so happen, that any part of the land should be lost, the loss to be equally divided, &c.” If the construction as to the quantity sold, which still leaves land enough to fill up the quantity and boundaries of the several devises, should be made to operate to diminish what is specified, and leave untouched that which was not specified, it argues strange whimsicality in the testator, or that there has been some undue practice upon his understanding. What would be the natural progress and operation of the mind in making this disposition?
Petition for a re-hearing.
The testator says in his own mind, I have two military tracts of land, which I wish to dispose of, by my will among other things, being indeed all I claim, and that is somewhat disputed, as appears to have beéh the case, by interfering claims, supposing it safe, there are some acres of surplus in each survey. I will give my son Richard, 666 1-2 acres, to James and Joel, each, a like quantity; and to the other children, the several quantities designated, and as after all these devises are filled, there is a surplus or residue even of the nominal quantity, and another, being that over the nominal quantity called for, I will give the residue, to be equally divided between my said three sons, for some reason he might have assigned; not, however, because he had not *590 given them equal to, for he had given them already a much larger portion than any of the rest.
Petition for a re-hearing.
This order and design of the will, as to the designated quantities, is, by the codicils of 1801 &c. again repeated, referring to the will, and the location and boundary of the several portions devised, to each are thereby ascertained, which appears to bo amain object of them, as appears from their face. But as he had sold some land for his own use, he directs as before stated, that it should be taken equally from each of the legatee’s parts, andas to any losses by law suits, brought* or to be brought, the expenses and loss to be equally borne by each egatee. if lie meant, as by the opinion of the court is com ceived, that the surplus should remain untouched and undiminished, the incident, to-wit: that which would remain after satisfying the specified and defined legacies, would become the principal, and a primary devise; a thing, I may venture to say, in all the specimens of absurd and incongruous wills, never heard of before. It is s strong argument, as is believed, against thus construing the will. That the testator, notwithstanding, the clause that the land he had sold should be taken from each of the legatees’ parts, did not intend that should be done, except in the event of there not remaining land enough to satisfy the designated devises to each, seems to be further evidenced from the circumstance of his describing the quantity and boundary of each devisee’s part, in, the same codicil, wherein this clause is contained. As he knew what, and how much land he had sold for his own use, why did he not curtail each legatee’s or devisee’s part? And when too, the interpretation given, takes equally from his three sons, Richard, James and Joel, a part of their specified and described legacies; and for what? That they may get the residue or surplus undiminished. Does it not seem manifest from this circumstance, that the testator, acted under ignorance of the quantity of surplus in these two tracts, and was providing for an equal loss amongst his devisees, in case of a deficiency in part of the land devised, on account of what ho had sold, or on account of what might be lost by law?
Petition for a re-hearing.
2. As to the quantity of 28 acres, directed by the opinion to be deducted from each devisee’s part, as being the equal proportion of each of the land sold by the testator for his own use. It is not now perceived how the quantity of 252 acres of land, as sold by the testator, is made out from the evidence, without resorting to the deposition of Joel Hickman, who was a complainant, and directly interested to prove the fact. His testimony on the p. 279 and 80, taken too, after the decree rendered, and used, it as supposed, by the commissioners, appointed to divide the land, and excepted to by the defendants, as appears on its face. The deeds filed, from testator to others, are for land sold by his spns, Richard, James and Joel, for their own use.
How then does it appear, that 252 acres was sold for testator’s own use? It is true, he mentions having sold some land, but it was on plaintiffs’part, incumbent to have shown what, and how much.
Indeed several of the depositions which seem to have a bearing on the quantity sold by James Hickman, deceased, for his own use, if not all of them were taken after the interlocutory decree pronounced, and not as appears'by either,' order, or leave to that effect. Joel Hickman’s deposition, it will be seen, must be relied on, to prove the greater part of the 252 acres, claimed to be deducted.
S. It is respectfully submitted, if the foregoing remarks are not deemed sufficient to put the court upon enquiry, so as to reform the decree, still it needs some explanation or amendment, for the better direction of the parties and court below, as to the location of the several allotments. Material errors, or those affecting seriously the interests of some of the parties, as to the division in this respect, have been assigned. It would in all probability, if the decree or opinion, as to these, were more explicit, save controversy there on these points. We do wot mean that this court shall direct the forms and places, where the 28 acres in each case, if such be still required to be deducted from each legatee’s part, should be laid off, but if the opinion of this court is, that the court below, should adhere, as *592 nearly as may conveniently be done, to the present allotment, it might prevent serious difficulties.
Petition o-verruied.
Hanson and Wickliffe, for plaintiffs; Crittenden and Combs, for defendants.
All which is respectfully submitted.
By the Court. If the petition should prevail, a deduction pro rata, instead of an equal deduction from each devisee’s part would ensue. The petition is overruled.